UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TEMIKA BROWN, MARSEL BREWER, )<br>AND MARY JONES, )<br>on behalf of themselves and )<br>others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PECO FOODS, INC., )<br>)<br>Defendant. ) | 7:08-cv-0347-LSC |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration the motion for partial summary judgment filed by Peco Foods, Inc. ("Defendant"), on April 8, 2009 (Doc. 49.)

Plaintiffs Temika Brown, Marsel Brewer, and Mary Jones allege that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by intentionally failing to compensate them for all hours worked,

and by failing to pay time and a half for all overtime hours worked.[1] (Doc. 1 ¶ 5.) They seek unpaid wages, unpaid overtime, liquidated damages, court costs, attorneys' fees, and appropriate equitable relief. (Doc. 1 ¶ 1.)

This Court invited the parties to expedite discovery related specifically to the application of 29 U.S.C. § 203(o) and its effect on this case. Based on the limited nature of the expedited discovery, many of Plaintiffs' claims will not be addressed in this Opinion.

In its motion for partial summary judgment, Defendant claims that it is entitled to judgment against Plaintiffs' claims for unpaid wages related to donning and doffing of protective clothing. Specifically, Defendant claims that § 203(o) forecloses Plaintiffs' right to compensation for donning, doffing, and related activities because Defendant maintained an established practice for compensating employees for these activities, to which the union had agreed or acquiesced through collective bargaining agreements ("CBAs"). (Doc. 50 at 21.)

---

[1] Specifically, Plaintiffs claim that Defendant does not pay Plaintiffs for time spent (1) donning and doffing uniforms, sanitary clothing, and safety equipment; (2) walking to and from donning/doffing areas, work areas, and break areas and washing; and (3) taking compensable breaks. (Doc. 1 ¶ 19.) Plaintiffs also allege that Defendant's failure accurately to account for all compensable time worked by Plaintiffs has deprived Plaintiffs of overtime premiums to which they would otherwise be entitled under the FLSA. *Id*. at ¶ 22.

The Court notes that the Plaintiffs have not filed a response controverting the facts alleged in Defendant's summary judgment brief. Therefore, the material facts set forth by Defendant in said brief are deemed to be admitted for summary judgment purposes only.[2] Upon careful consideration of the evidence and legal arguments presented, Defendant's motion is due to be **granted in part and denied in part**.

II.   Facts.

Defendant operates a poultry processing facility located in Brooksville, Mississippi.   (Doc. 50 at 2.)   Employees at the Brooksville facility ("Brooksville") have been represented by the United Food and Commercial Workers Union ("UFCW") since 2001 and are covered by negotiated CBAs. *Id.* Since 2001, three successive CBAs have been negotiated at Brooksville. *Id* at 3.

At all relevant times, Defendant has used a control employee to measure compensable time for each department at Brooksville.  (Doc. 50 at

---

[2]When a motion for summary judgment is properly made and supported, the nonmoving party is required "to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).

3.) Specifically, the practice is for an employee from each production department to swipe a timecard at the beginning of the shift, don all necessary protective clothing, and report to his workstation. The employee then swipes another timecard when ready to begin work. This process is reversed at the end of the shift to determine the end of the workday. Employees in each department are paid a beginning time which is based upon the initial swipe by the control employee for the department and an ending time which is based upon the final swipe by the control employee after removing all required protective clothing. This practice has been in place at all times relevant to this litigation. *Id.*

III.   Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party. *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV. Discussion.

The FLSA's core requirement is that employers must pay their employees a wage for all of the "work" that they perform. *See generally Smith v. Aztec Well Service Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006). The basic issue addressed in this Opinion is whether Plaintiffs' donning and doffing activities are compensable under the FLSA. Answering this question,

for the most part, entails applying the recent Eleventh Circuit decision in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007).

As in this case, *Anderson* involved poultry processing employees who sought compensation for donning, doffing and related activities at the beginning and end of shifts, and before and after breaks. The processing employees in *Anderson* alleged that they were required to wear "various articles of protective clothing, including smocks, hair/beard nets, gloves, and hearing protection" and that their employers required employees "to arrive before line time [began] in order to don the clothing and remain after line time [ended] to doff the clothing." *Id.* at 949. The *Anderson* plaintiffs were also represented by a union; however, prior to the adoption of the CBA, they had previously received no compensation for donning, doffing and related activities. They alleged that this practice violated the FLSA, but the Eleventh Circuit held that § 203(o) prevented the processing employees from recovering. *Id.* at 959. That is also the fate of Plaintiffs in this case.

A.   Donning and Doffing at the Beginning and End of the Workday.

"In determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the

beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  29 U.S.C. § 203(o).  Sub-section 203(o) applies if two conditions are met: (1) the activity at issue constitutes "changing clothes"; and (2) such time was excluded from measured working time by the express terms of or by custom or practice under a bona fide CBA.

    1.    Changing Clothes.

In *Anderson*, the Eleventh Circuit rejected the contention that the protective garments which processing employees were required to don and doff were not "clothes" as that term is used in § 203(o).  *Id.* at 956.  The Court also rejected the argument that "changing clothes," within the meaning of § 203(o), could "only refer to the specific act of arriving at work in one set of clothes, removing those clothes, and putting on a different set of clothes."[3]  *Id.*

---

[3] In reaching this conclusion, the Eleventh Circuit specifically rejected the Ninth Circuit's holding in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005).  In *Alvarez,* the Ninth Circuit held that the garments at issue did not constitute "clothes" and the donning/doffing of those garments did not constitute clothes "changing."  *Alvarez*, 339 F.3d at 904-05.  While the Supreme Court affirmed the *Alvarez* decision, its review was limited to the question of "[w]hether walking that occurs between

Plaintiffs allege that the "work uniforms, sanitary clothing and protective safety equipment" they are required to wear can include ear plugs, smocks, work pants and shirts, safety jump suits, safety boots, hair nets, face nets, hard hats, aprons, and hand and arm protections.  (Doc.1 ¶ 19.)  These types of items were determined to be "clothing" by the Eleventh Circuit.[4]  *Id*. at 949.  Plaintiffs have failed to differentiate the clothing worn by Plaintiffs from that of the clothing held to fall within § 203(o) by the Eleventh Circuit in *Anderson*.  Without any factual distinctions, this Court is bound to follow *Anderson*; thus § 203(o) applies to the clothes changing activities at issue in this case.

2.	Custom or Practice Under a Bona Fide CBA.

With regard to the evidence necessary to establish the existence of a custom or practice under a bona fide CBA as set forth in § 203(o), the

---

compensable clothes-changing time and the time employees arrive at or depart from their actual work stations constitutes non-compensable 'walking . . . to and from the actual place of performance of the principal activity' within the meaning of Section 4(a)" of the Portal-to-Portal Act of 1947.  Petition for Writ of Certiorari, *Alvarez*, 546 U.S. 21 (No. 03-1238).  The Supreme Court did not address the application of § 203(o); therefore *Alvarez* is not controlling as to the issue addressed by this motion.  *See generally*, *Alvarez*, 546 U.S. 21 (2005).

[4] In *Anderson*, the Eleventh Circuit noted that the processing employees were required to wear various articles of protective clothing, including: smocks, hair/beard nets, gloves, and hearing protection.  *Anderson*, 488 F.3d at 949.

Eleventh Circuit rejected the argument that a custom or practice under § 203(o) cannot arise "absent some actual negotiation or agreement between the union and employer on that subject." *Anderson,* 488 F.3d at 958. Assuming that "the CBAs never addressed the compensation policy with respect to clothes changing and that the parties to the relevant CBAs never discussed the policy," the court "nevertheless conclude[d] that the . . . Plaintiffs' view of the law is incorrect." *Id*. The Eleventh Circuit reasoned that "[r]elying again on a common sense understanding of the statute's language, we believe that a policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA." *Id*. at 958-59. The Court observed that the "[a]bsence of negotiations cannot in this instance equate to ignorance of the policy. Rather, it demonstrates acquiescence to it." *Id*. at 959. Based on this analysis, the Eleventh Circuit found that the district court had correctly granted the employer's motion for summary judgment and that "§ 203(o) forecloses the . . . Plaintiffs'

claim that the FLSA required [the employer] to compensate them for time spent donning/doffing the protective clothing at issue." *Id*.

Here, the evidence indisputably shows that Defendant maintained a policy for compensating its employees for donning and doffing activities both at the beginning and end of the workday. Before the shift begins, an employee from each production department swipes a timecard to begin the shift. That employee then dons all necessary protective clothing and reports to his workstation. The employee then swipes another timecard when he or she is ready to begin work. This same process is then reversed at the end of the shift. Employees in each department are paid a beginning time which is based upon the initial swipe by the control employee for the department and an ending time which is based upon the final swipe by the control employee after removing all required protective clothing.

This method of determining paid time was in place prior to the negotiation of the CBAs. As the Eleventh Circuit clearly stated in *Anderson*, the lack of bargaining for a different method of keeping time demonstrates acquiescence to the policy in place prior to the adoption of the CBA. The fact that Plaintiffs disagree with the adequacy of this policy demonstrates

that the bargaining table, not the courtroom, should have been the appropriate forum for expressing their grievances. The evidence shows that the Brooksville facility has renegotiated its CBA three times since 2001. Defendant's policies and practices have persisted throughout the negotiation of the CBAs, therefore, they satisfy § 203(o)'s "custom or practice" requirement.

    B.    Donning and Doffing Before and After Breaks.

In reaching its decision in *Anderson*, the Eleventh Circuit also rejected the argument that § 203(o) was an "exemption" which should be narrowly construed against the employer. *Anderson,* 488 F.3d at 957. The Court stated that, "§ 203(o) is not an exemption under the FLSA but is instead a definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions." *Id*. The Court reasoned that "construing § 203(o) narrowly against employers as an FLSA 'exemption' contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendment's language." *Id*. at 958. Based on this interpretation, Defendant argues that the Eleventh Circuit's ruling extends beyond the time spent changing clothes at the

beginning and end of the workday to include donning and doffing activities related to breaks as well. To support this argument, Defendant appears to rely exclusively on the fact that in *Anderson*, the Eleventh Circuit affirmed the granting of summary judgment by the lower court, which included the dismissal, without any discussion, of claims for compensation related to clothes changing for breaks.

This Court, however, questions whether *Anderson* resolved the issue of break related donning and doffing. In its analysis, *Anderson* does not discuss potential differences between pre-shift clothes changing and midday break clothes changing. Further, the language of § 203(o) suggests that it may not apply to midday breaks. Section 203(o) states that "time spent in changing clothes or washing **at the beginning or end of each workday . . .**" can be excluded from compensation. 29 U.S.C. § 203(o) (emphasis added).

In addition, Defendant did not cite the Court to any authority, binding or otherwise, which clearly addresses the application of § 203(o) to breaks. While Defendant cited numerous Circuit Court and District Court opinions addressing meal breaks, none of the cases clearly dispose of the issue by

conducting § 203(o) analysis. For example, while *Bejil v. Ethicon, Inc.*, 269 F.3d 477 (5th Cir. 2001) discussed midday meal breaks in a separate section, the court did not consider the issue of midday donning and doffing under § 203(o) analysis. *See Bejil*, 269 F.3d at 479-81. Also, in *Hoover v. Wyandotte Chem. Corp.*, 455 F.2d 387 (5th Cir. 1972), *Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2nd Cir. 1994), and *Turner v. City of Phila.*, 262 F.3d 222 (3rd Cir. 2001), the Second, Third, and Fifth Circuits did not specifically address midday breaks in their analysis of § 203(o). Likewise, none of the District Court opinions cited by Defendant discuss the application of § 203(o) to midday breaks.

This uncertainty also was not addressed by Plaintiffs, who failed to present any argument that the language of § 203(o) does not apply to donning and doffing activities that take place during breaks or at meal times.

Based on the aforementioned uncertainty, the Court does not feel that summary judgment is due to be granted as to the midday breaks at this point. The Court will allow this issue to be included in the final summary judgment motion to be filed at the appropriate time.

VI. Conclusion.

For the reasons stated above, Defendant's motion for partial summary judgment will be granted in part and denied in part. A separate order will be entered in conformity with this opinion.

Done this <u>10th</u> day of <u>November 2009</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE